603 So.2d 731 (1992)
STATE of Louisiana
v.
Ricky Darren HEAROLD.
No. 90-K-2094.
Supreme Court of Louisiana.
June 29, 1992.
*733 Louis G. Scott, Hunter, Scott, Blue, Johnson & Ross, for applicant.
Richard Phillip Ieyoub, Atty. Gen., Jerry L. Jones, Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., for respondent.
LEMMON, Justice[*].
The principal issues in this case involve the admission of hearsay evidence and the effect of that admission on the sufficiency of the evidence of intent to distribute methamphetamine.
Facts
On October 6, 1988, narcotics officers, acting on a tip from a confidential informer, stopped a car driven by defendant and owned by William Costin, a passenger in the car. Defendant attempted to evade the police, but lost control and the car became mired in the mud on the shoulder of the road.
A search of the men and the car did not produce any drugs or usual drug paraphernalia, but a book, Physicians' Desk Reference, was found in the car. The officers also found a small plastic bag on the ground in the tire track behind and under the rear tire on the driver's side. Since the bag had not been run over in the mud, the officers concluded that the bag had been thrown there after the car was stopped, probably when defendant had diverted their attention by throwing a soft drink bottle into the air as he got out of the car and walked toward the rear. The bag contained three and one-half grams (one-eighth ounce) of methamphetamine.
Defendant and Costin were charged with possession of methamphetamine with intent to distribute and with conspiracy to possess methamphetamine with intent to distribute. The prosecutor subsequently dismissed the charges against Costin.
At defendant's trial, the officers testified over defendant's objections that Costin told them at the scene "he did have a methamphetamine problem but he wasn't the one dealing tonight," that they had "received information that Mr. Costin and Mr. Hearold were involved in narcotics dealings in the eastern part of the parish," and that the informant told them "two persons had a quantity of methamphetamine and had *734 that quantity for sale." Based on this and other hearsay testimony and on the methamphetamine found in the bag, the jury found defendant guilty on both charges.
The court of appeal affirmed the conviction of possession with intent, but reversed the conspiracy conviction because the record contained no evidence whatsoever of an agreement between defendant and Costin to possess methamphetamine with intent to distribute. 567 So.2d 132. The court further noted that the trial judge erred in admitting Costin's statement that "he wasn't the one dealing tonight" as a co-conspirator's statement because the prosecutor failed to establish a prima facie case of conspiracy and because the statement was not made while participating in a conspiracy and in furtherance of the objective of the conspiracy. Nevertheless, the court concluded without discussion that the improper admission of the statement did not prejudice defendant as to the possession with intent conviction. The court found sufficient evidence of intent to distribute in testimony "admitted without objection that law enforcement officials had received information that the defendant was trafficking in drugs," 567 So.2d at 135, along with testimony that an "eight ball" (one-eighth of an ounce) of methamphetamine was too large an amount for personal use.
We granted certiorari primarily to review the evidentiary and sufficiency issues. 577 So.2d 41.
Sufficiency of the Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt.[1] When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
We accordingly proceed first to determine whether the entirety of the evidence, both admissible and inadmissible, was sufficient to support the conviction.
The crime of possession of methamphetamine with intent to distribute is defined as follows:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II.
La.Rev.Stat. 40:967A(1). (emphasis added). Defendant does not contest the proof that *735 he possessed the drug and that he did so knowingly; he vigorously contests, however, the proof of his intent to distribute the drug in his possession.
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
The evidence against defendant consisted of Officer Benjamin's testimony that "we had received information [from the informer] that Mr. Costin and Mr. Hearold were involved in narcotics dealings in the eastern part of the parish";[2] of Officer Benjamin's testimony that Costin told him at the scene "he [Costin] had a methamphetamine problem but he wasn't the one dealing tonight";[3] of Officer Benjamin's testimony that he encountered defendant in Texas in July of 1988 while investigating another Ouachita Parish person "who is also a methamphetamine dealer"[4] and that while they found no drugs in the car occupied by defendant which was stopped during the Texas investigation, he believed "[w]e stopped them a little bit too early";[5] of Officer Boney's testimony that he told defendant in April of 1988 he (Boney) had "received so many complaints on him concerning his involvement in drug traffic that there was a possibility he was going to end up in jail";[6] of Officer Benjamin's testimony that he remembered "we had received several reports about him dealing out of that house";[7] of methamphetamine in a bag that Officer Boney opined was packaged in bulk for a later breakdown for distribution to others and was too large an amount for personal use only; of Officer Benjamin's testimony that an "eight ball" of methamphetamine could yield "17 or 18 hits";[8] and a copy of Physicians' Desk Reference, identified without explanation by Officer Benjamin as a "common item" found in association with drug distribution and characterized by the court of appeal as "some limited evidence" of intent to distribute.
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no *736 other inference is possible. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Harveston, 389 So.2d 63 (La.1980); State v. Willis, 325 So.2d 227 (La.1975).
In the present case there were no circumstances indicating that defendant intended to distribute the one-eighth ounce of methamphetamine that he possessed at his arrest. The drug was found in one package rather than in a number of smaller packages measured out in single doses. There were no weighing scales, plastic baggies or other paraphernalia normally used for measuring or packaging drugs for distribution.[9] Nor were any weapons or large sums of cash, items commonly seized in drug distribution arrests, found on defendant's person or in the car. While Officer Benjamin stated that a Physicians' Desk Reference is a common item found in drug distribution arrests, he did not explain the use of that book in connection with drug distribution. Certainly the fact that a Physicians' Desk Reference is found in a car, even when drugs are also found in the car, does not give rise to any reasonable inference that the drugs are intended for distribution rather than personal use.
Mere possession of the drug may establish intent to distribute if the amount of the drug in possession of the accused is inconsistent with personal use only. State v. Trahan, 425 So.2d 1222 (La.1983) (possession of enough marijuana for 1,600 cigarettes, along with drug paraphernalia, was sufficient evidence of intent to distribute); State v. Sibley, 310 So.2d 100 (La.1975) (a pre-Jackson v. Virginia case in which possession of enough marijuana for 600 cigarettes was sufficient evidence of intent to distribute).
Here, Officer Benjamin testified that the usual dose of methamphetamine was one-fourth of a gram and that an "eight ball" would yield seventeen to eighteen "hits."[10] The frequency of the dosage depends upon the user. According to the officer, a "person with a bad amphetamine habit" may consume two doses a day and could use an "eight ball" in a week and a half.
There were two persons in the car containing the methamphetamine, and one could reasonably infer from the evidence that both were users.[11] Two users consuming one-fourth of a gram per dose twice a day could consume three and two-tenth grams in less than four days. Moreover, two persons purchasing the drug in bulk could save a considerable amount of money.[12]
A rational trier of fact could not have concluded beyond a reasonable doubt, solely on the evidence in the record pertaining to the amount of methamphetamine found in a single bag and the Physicians' Desk Reference found in the car, that defendant was guilty of the "intent to distribute" element of the crime. Nevertheless, there was considerable testimony by the officers as to information received about defendant's having engaged in drug distribution over a substantial period of time. The officers did not establish the reliability of the information, but their testimony conveyed to the jury the impression that they believed the information, thereby bolstering the credibility of the out-of-court declarants. This evidence of prior drug distribution, if admissible and when considered with the other evidence pertaining to the amount of drugs found in the bag, could provide a basis for a rational trier of fact to conclude beyond a reasonable doubt that defendant intended to distribute the methamphetamine in his possession in accordance with his longstanding drug dealing operation.
*737 Accordingly, while defendant may be entitled to a reversal of the conviction because the declarants were not under oath at the time of the statements and were not subject to cross-examination at trial (an issue discussed hereinafter), he is not entitled to an acquittal based on insufficiency of the overall evidence (including the inadmissible evidence). If the hearsay statements were properly admitted, the conviction will stand; but if the hearsay statements were inadmissible and not harmless error, the conviction will be reversed and a new trial ordered.
Hearsay Evidence
A hearsay statement is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. 5 John H. Wigmore, Evidence in Trials at Common Law § 1364 (Chadbourn rev., 1974); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, ¶ 800[04] (1991); La.Code Evid. art. 801(C); State v. King, 355 So.2d 1305 (La.1978). In the present case much testimony by the officers, consisting of statements by out-of-court declarants, was offered for the purpose of showing the truth of the statements.
On direct examination concerning his investigation of defendant and Costin, Officer Benjamin testified that "[w]e had received information that Mr. Costin and Mr. Hearold were involved in narcotics dealings in the eastern part of the parish." Defendant objected and moved for a mistrial on the basis of hearsay and other crimes evidence. The trial judge ruled that the statement was not other crimes evidence because it referred to the criminal transaction that was the subject of the trial. The judge further ruled that a statement containing the immediate information which prompted the officer's investigation was admissible to explain the officer's conduct.
Law enforcement officers may not testify as to the contents of an informant's tip because such testimony violates the accused's constitutional right to confront and cross-examine his accusers. State v. Banks, 439 So.2d 407 (La.1983) (officer's testimony that an informant told him defendant was standing on a particular street corner waiting to buy ten bags of heroin from a New York dealer was inadmissible and prejudicial hearsay); State v. Thompson, 331 So.2d 848 (La.1976) (officer's testimony that an informant told him the defendant committed the armed robbery was inadmissible hearsay and was prejudicial because it directly related to the guilt of the accused); State v. Murphy, 309 So.2d 134 (La.1975) (officer's testimony that a confidential informant told him the defendant was one of the perpetrators involved in the armed robbery was inadmissible hearsay and the erroneous admission was not harmless because it impermissibly bolstered the testimony of two victims who identified the defendant as one of the robbers).
Moreover, as to any exception to the hearsay rule based on an officer's testimony regarding information which immediately prompted an investigation, this court pointed out in State v. Wille, 559 So.2d 1321, 1331 (La.1990), that the issue of relevancy is significantly interrelated with the hearsay issue. The fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but may not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. George W. Pugh, Louisiana Evidence Law 429-31 (1974).
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused. The present case was tried before the Wille decision, but the point cannot be overemphasized. Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood *738 that the jury will consider the statement for the truth of the matter asserted.
Here, the reason why the officer began his investigation of defendant was totally irrelevant to the issue of defendant's guilt of any of the essential elements of the crime. Irrelevant or marginally relevant evidence should not be used as a vehicle to permit the introduction of highly prejudicial hearsay evidence consisting of the substance of an assertion of criminal activity by a declarant who was not under oath at the time of the statement and not subject to cross-examination at trial. The jury had no opportunity to evaluate the out-of-court declarant whose credibility may have been substantially less than that of a police officer testifying in full uniform. The hearsay testimony by Officer Benjamin about information received from an out-of-court declarant served no other purpose than to show by improper evidence that defendant was a drug dealer and was thus clearly inadmissable hearsay offered to prove the truth of the statement. Moreover, the officer's testimony went far beyond the scope of the question about the substance of the investigation, and the officer throughout the trial utilized a series of unresponsive answers to get improper and damaging hearsay evidence before the jury.[13]
Officer Benjamin further testified that Costin "told me he had a methamphetamine problem that night but he wasn't the one dealing that night." The court of appeal correctly held this statement was inadmissible hearsay evidence that did not qualify under the co-conspiratory exception to the hearsay rule. Nevertheless, that statement did get before the jury.
There was other hearsay testimony by Officer Benjamin which should have been excluded. During cross-examination the defense attempted to show the officer's bias against defendant by asking Benjamin if he had warned defendant in Texas in July of 1988 not to return to Ouachita Parish. On redirect, in answer to a question about the reason for his trip to Texas, the officer testified that he encountered defendant in Texas while investigating another Ouachita Parish man "who is also a methamphetamine dealer." The trial court denied the defense motion for mistrial, but cautioned the officer against answering beyond the question. Shortly thereafter, when asked whether drugs were found in the car in which defendant was riding, Officer Benjamin answered negatively, but quickly added that "[w]e stopped them a little bit early."[14]
During later testimony about an investigation of a motorcycle theft, Officer Boney, in answer to a question whether the investigation was a pretext for harassing defendant, stated that they had "received so many complaints on him concerning his involvement in drug traffic that there was a possibility that he was going to end up in jail." When Officer Benjamin was asked about the motorcycle investigation, he replied, "I remember something about a motorcycle but we had received several reports about him dealing out that house."[15]
Each of these statements constituted inadmissible hearsay evidence consisting of statements by out-of-court declarants offered to prove the truth of the matter asserted. Most of this evidence was doubly tainted by the pattern of unresponsive answers utilized by the officers to get the point across to the jury that defendant was a drug dealer. The court of appeal relied partially on this hearsay evidence to find sufficient evidence of the "intent to distribute" element of the crime. Indeed, the court specifically mentioned in discussing the sufficiency issue an "investigation for involvement in drug activity for a considerable period of time" and an investigation of *739 a motorcycle theft which had "overtones of drug trafficking." 567 So.2d at 135. Contrary to the suggestion of the intermediate court, there was an objection to all but one of the statements discussed above.
We therefore conclude that the statements were inadmissible hearsay evidence, the admission of which was substantially prejudicial. Because we cannot say beyond a reasonable doubt that the jury did not rely on the improper hearsay evidence in determining that defendant was guilty of intending to distribute the drug he possessed, the erroneous admission of the hearsay evidence was not harmless beyond a reasonable doubt. Yates v. Evatt, ___ U.S. ___, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); State v. Gibson, 391 So.2d 421 (La. 1980).
Decree
The judgment of the court of appeal affirming the conviction is reversed, and the case is remanded for a new trial.
DENNIS, J., concurs in the result but does not agree with the trial error-sufficiency of evidence discussion in its entirety or its application to all future criminal cases.
NOTES
[*] Judge Thomas J. Kliebert of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justice Pro Tempore in place of Associate Justice Pike Hall, Jr., who was recused.
[1] Alternatively, the accused could be entitled to a reduction of the conviction to a judgment of guilty of a lesser and included offense. La.Code Crim.Proc. art. 821; State v. Byrd, 385 So.2d 248 (La.1980).
[2] This statement was a response to the question" And what did the investigation consist of? What did you do?"
[3] This statement was in response to the question" What did he tell you about the events that were going on?" The question was allowed under the co-conspirator rule after an objection and argument outside the presence of the jury.
[4] This statement was in response to a question about the purpose of the officer's trip to Texas.
[5] This statement was in response to a question whether they found drugs in the car occupied by defendant.
[6] This statement was in response to a question whether he told defendant he needed to be in jail because of his association with Costin.
[7] This statement was in response to a question about whether he told defendant on a trip to defendant's home in April of 1988 that he was investigating a motorcycle theft.
[8] Officer Boney "guess[ed]" that an "eight ball" was not for personal use, but for sale, because it was more than one person could use at a time. He conceded he was not familiar with the amount of methamphetamine usually measured out for use, but had been told by "other people" that twelve injections can be obtained from one gram. This conjectural (and inadmissible) testimony had no probative value and did not avail the prosecutor in fulfilling his burden of proof of intent.
[9] According to Officer Benjamin, methamphetamine is ingested by snorting, by placement in a liquid, or by injection with a needle.
[10] The record shows that an "eight ball" contained between three and two-tenths grams and three and one-half grams. The smaller amount would yield thirteen "hits" at one-fourth of a gram per "hit."
[11] Defendant was in possession of the drugs, but Costin admitted he "had a methamphetamine problem."
[12] According to Officer Benjamin, for methamphetamine purchased at $125 per gram an "eight ball" would cost about $440, but the same amount could be purchased in bulk for $350.
[13] Prior to trial defense counsel had moved for and obtained a ruling ordering the prosecutor and the police not to present hearsay testimony.
[14] The trial judge, in apparent frustration over the officer's persistent pattern of unresponsive testimony, recessed to consider the mistrial motion, but ultimately decided that an admonition to the jury was adequate.
[15] There was no objection to Boney's comment, but defense counsel entered a mistrial motion after Benjamin's unresponsive statement.