PLOTKIN, Judge.
Defendant, Antonio R. Johnson, aka Rico Johnson was charged with one count of possession of cocaine with the intent to distribute. A jury found him guilty as charged. He was sentenced to seven years at hard labor.
The single issue raised in this appeal is that the evidence is insufficient to convict him for possession of cocaine with intent to distribute, but is sufficient for a lesser responsive verdict of simple possession of cocaine.
On the night of June 5, 1992, Officers Paul Long, Bill Renaudin, Alisa Lockett, Keith Honóre, and Keith Williams were working in the Sixth District. Officers Lockett, Honoré, and Williams were in plainclothes; Officers Long and Renaudin were in their police car keeping the defendant under observation. Officer Long testified that while he had the defendant under observation, from approximately 10:30 p.m. to 11:00 p.m., between eight and ten people came up to the defendant and there was hand movement.
Officer Honoré testified that at approximately 12:40 a.m. he dropped Officers Lockett and Williams off near the defendant’s location at Laurel and Washington Avenues and then set up surveillance of the defendant. Officer Honoré, who was using binoculars, saw the other officers approach the corner where the defendant was standing. When the officers were a few feet from the defendant, he trotted across the street. Officer Honoré then drove his car to the location; he saw Officer Williams “subduing” the defendant while Officer Lockett was bending down. Officer Honoré then apprehended and searched four people that had been standing nearby throughout the incident. .
Officer Alisa Lockett testified that Officer Honoré dropped her and Officer Williams off two blocks from the corner of Laurel and Washington. As they approached the corner, Officer Lockett “keyed” the police radio which Officer Williams was carrying. After she did so, other people in the district began talking on the channel, blowing the officers’ cover. At that time, the defendant jogged diagonally across the street; none of the other people in the vicinity reacted to the radio. When the defendant reached the opposite corner, he dropped an object which Officer Lockett confiscated.
Officer Williams stopped and arrested the defendant. Once the defendant was stopped, the people sitting on the steps of the corner double house, a house in which the defendant resided with his mother; jumped up and were immediately ordered to get down by the police officer. The officers did not get any names or addresses of the people who witnessed the incident. Officer Long claimed that he seized $81.00 in currency from the defendant’s back pocket.
After the defendant’s arrest, the police officers went to his mother’s house and asked for permission to search for drugs. Near the' front door, which had been cracked open throughout the incident, the officers found a semi-automatic weapon behind the floor-model television set. No drugs and no other weapons were found in the house.
At trial, Officer Lockett identified the object, State’s exhibit S-2, which she picked up from the street.[1] It was stipulated that S-2 positively tested as cocaine.
*905 The defense presented four witnesses including the defendant. The defendant’s brother Kerry Johnson testified that the defendant was talking on the telephone, which was located on the corner, when the plainclothes officers approached him. Kerry saw the defendant with his hands in the air, leading Kerry initially to believe that the defendant was being robbed. Kerry Johnson also testified to being forced to lay on the ground by Officer Lockett and to being searched. He testified that the officers questioned him and the four other people who had been outside about where drugs could be found. Kerry also testified that the officers threatened to arrest his mother if they found any drugs in her house. Finally, Kerry Johnson testified that he had never seen his brother in possession of the semi-automatic weapon which was found in the house and that the gun belonged to Brandon, who was a friend of another brother, Perry Johnson.
Christine Ducre was the second defense witness. She testified that she lived next door to the defendant, in the other half of the double house, and that she was sitting on her steps outside when the defendant was arrested. Her testimony was very similar to the testimony of Kerry Johnson, including the fact that she initially believed that the defendant was being robbed, that the defendant was on the pay phone when the plainclothes officers approached him, that she was ordered to lay on the ground, that she was searched, and that she was questioned about drugs. Ms. Ducre also testified that the police slapped the defendant in the face and beat him.
The defendant testified that he was on the pay phone talking to his girlfriend when suddenly a gun was pointed at his head. He denied having had any drugs in his possession and testified that the gun found behind the television belonged to Brandon. He also testified that the police slapped him around. The police questioned him about two people who lived in the St. Thomas Project whom he did not know. During cross-examination, the defendant stated that he only had fifty-five dollars with him when he was arrested and that he received the money from his girlfriend.
The final defense witness was the defendant’s mother, Clemitine Johnson. She testified that she was sleeping on the couch downstairs when the door flew open. When she went to the door, the police told her that if she did not let them in they were going to get a warrant. Ms. Johnson signed a consent to search warrant, and the officers searched the house. According to Ms. Johnson, after the officers searched the house and her granddaughter, the granddaughter’s earrings were missing. The officers also took thirty dollars from her granddaughter. Ms. Johnson was not given a receipt for the gun which the officers found behind the television. Ms. Johnson denied having seen the gun before and stated that she would have had it removed from her house if she had known it was present.
A review of the record for errors patent reveals that there are none.
The only error assigned by the appellant is that the evidence was insufficient to demonstrate anything beyond the fact that the defendant possessed the cocaine for his personal consumption and not with the intent to distribute. In support of his argument that the evidence was insufficient, the appellant relies upon the recent Supreme Court ruling in State v. Hearold, 603 So.2d 731 (La.1992).
In Hearold, 603 So.2d 731, 735-36, the Court discussed the factors which may be used to prove intent through circumstantial evidence:
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors in- *906 elude (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute....
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to dis-. tribute, unless the quantity is so large that no other inference is possible. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Harveston, 389 So.2d 63 (La.1980); State v. Willis, 325 So.2d 227 (La.1975).
In Hearold the Court found that there was hearsay evidence, admitted erroneously, which established that the defendant had been involved in narcotics distribution. Without this hearsay, however, the evidence consisted of expert testimony that the defendant was in possession of one “eight ball” which would yield approximately seventeen to eighteen doses. The “eight-ball” was found in one package rather than in individual doses. No weighing scales, plastic baggies, or other paraphernalia was found with the defendant. Also, the Court noted, no weapons or large sums of cash were seized from the defendant’s person or in his car. Furthermore, the defendant was in the company of an admitted drug user. The Court noted that this additional fact could be used to calculate whether the amount of drugs were consistent with personal consumption.
The Court in Hearold ultimately concluded that the defendant was entitled to a retrial, not a judgment of acquittal, because the admissible and inadmissible evidence was sufficient to support the conviction. 603 So.2d 731, 737. The Court made this decision because of the extensive hearsay testimony regarding the defendant’s involvement in prior drug distribution, evidence which the jury and the appellate court apparently relied upon to find the defendant guilty.
After Hearold, the Supreme Court addressed the issue of the sufficiency of evidence to find an intent to distribute drugs in State v. Tong, 609 So.2d 822 (La.1992). In Tong the Court found that no rational trier of fact could have found that the defendant had the intent to distribute. The evidence was sufficient for a finding that the defendant possessed the drugs (marijuana). The Court substituted a verdict of simple possession of marijuana. The evidence presented in Tong consisted of expert testimony that the two plastic bags of marijuana found in the defendant’s possession were “dime” or “nickel” bags, which represented the low end of the distribution traffic. A dietetic scale was seized from the defendant; however, the expert admitted that the scale was too crude to accurately weigh the amount of marijuana found in the bags. There was also testimony that the defendant and his vehicle contained odors consistent with someone smoking marijuana even though there was no smoking paraphernalia found. Finally, three empty baggies were found in the glove compartment of the defendant’s car.
After reviewing all of the expert’s testimony, the Court in Tong concluded that the testimony “offered the jury no rational basis for rejecting the reasonable hypothesis presented by the evidence at trial that the defendant possessed the marijuana for personal use and not for distribution.” Tong, 609 So.2d 822, 825.
Under the Supreme Court’s decisions in Hearold and Tong, the appellant’s contentions have merit. The State presented absolutely no testimony, expert or otherwise, regarding the packaging or the amount of the cocaine which the defendant threw down. No scales or general paraphernalia for drug distribution were seized from the defendant or from his home. Furthermore, there was no expert testimony to show that the amount of currency seized from the defendant, $81.00, was consistent with *907 drug distribution. The defendant claimed he possessed only $55.00; his mother testified that the police seized additional cash from her granddaughter. Nevertheless, it does not follow that $81:00 is such a large sum of money that a reasonable trier of fact could infer that it is consistent with drug distribution. Also, despite the State’s attempt to link the defendant to the semiautomatic weapon, which had been found in the house where the defendant resided, it failed to prove the connection to the defendant. Again, there was absolutely no evidence to establish that the weapon belonged to the defendant, that he had ever handled it, or that he even knew it was in the house.
Of all of the evidence which was presented to the jury, the only testimony or evidence which marginally indicated drug distribution was the testimony of Officer Long that he observed the defendant from approximately 10:30 p.m. to 11:00 p.m., that during that period between eight and ten people approached the defendant and that he observed hand movement. However, the officer’s testimony that the movement of the hands was “indicative to (sic) a narcotics transaction” was found to be objectionable by the trial court; the court admonished the officer to state only what he observed. The officer gave no further testimony about his observations. Therefore, the testimony was only that he saw “some movement of the hands.” Again, this testimony does not refute a reasonable hypothesis of innocence. Movements of the defendant’s hands under the circumstances in this case does not prove drug distribution. The State did not present any evidence that any of the people seen with the defendant were found to be in possession of cocaine immediately thereafter; therefore, clear and unequivocal evidence to support a finding of the intent to distribute is absent.
The absence of evidence in this case easily distinguishes it from cases in which the evidence was found sufficient. For example, in State v. Walker, 600 So.2d 911 (La.App. 4th Cir.1992), the defendant dropped a plastic bag containing approximately twenty smaller bags of crack cocaine; $248 dollars in cash were seized from his person. At trial the State’s expert testified that the amount of cocaine, the packaging of it, and the amount of currency were all consistent with street-level sales of cocaine.
In State v. Williams, 594 So.2d 476 (La.App. 4th Cir.1992), the defendants were found in possession of a small pile of cocaine, several baggies containing cocaine, various paraphernalia, a bottle of muriatic acid, and $560.00 in small bills. At the time they were in a virtually vacant apartment. The State’s expert testified regarding the typical packaging of cocaine for retail sales and that such sales were often made from small unfurnished apartments or fortified houses. Also, the expert noted that muriatic acid is often kept near cocaine so that it can be destroyed quickly. This Court found this evidence sufficient to sustain the conviction of possession with the intent to distribute.
In State v. Thomas, 543 So.2d 540 (La.App. 4th Cir.1989), writ denied 548 So.2d 1229 (La.1989), this Court sustained a conviction for the possession of cocaine with the intent to distribute; the amount of the drugs found on the defendant was thirty-three individually wrapped bags of cocaine.
The amount of cocaine seized in the instant case was six or seven rocks. Given that the Supreme Court in Hearold, supra, found that seventeen or eighteen hits of methampethamine, possibly split between two users, was not inconsistent with personal usage, it does not appear that a lesser quantity of individual doses of crack cocaine is a quantity from which evidence of the intent to distribute can be inferred. Finally, the type of expert testimony found in Walker and Williams is not present in the instant case, and the amounts of drugs and cash found were less than half that found in Walker and significantly less than that found in Williams and Thomas.
We conclude that the evidence presented by the State in this case is not sufficient to support the verdict of guilty of possession of cocaine with the intent to distribute, although it is sufficient to support the less *908 er and included responsive verdict of guilty of simple possession of cocaine. Accordingly, the judgment of conviction for possession of cocaine with the intent to distribute is vacated and a judgment of conviction for the lesser offense of simple possession of cocaine is entered. The case is remanded to the district court for resentencing consistent with this opinion.

. The transcript contains no description of the object which Officer Lockett picked up. In the appellant's brief, counsel states that he inspected the cocaine and it appears to be six or seven *905 rocks "possibly individually wrapped in corners of baggies or plastic wrap.” App. Br. 4.