MAX N. TOBIAS, JR., Judge.
 

 bOn 30 December 2009, the state charged the appellant, Dion P. Simmons (“Simmons”), with possession with intent to distribute cocaine. He entered a not guilty plea at his 5 November 2009 arraignment, and on 7 January 2010, the district court found probable cause and denied his motion to suppress the evidence. The state filed a notice of intent to introduce the criminalist report on 24 February 2010 and the defense filed its opposition to the notice on 18 May 2010, which was denied that same day. A jury subsequently found Simmons guilty as charged on 18 May 2010. He was sentenced on 1 June 2010 to serve twelve years at hard labor, to run concurrently with any other sentence that he may be serving. On 22 June 2010, the district court granted Simmons’ motion for appeal. A motion for new trial was filed on 1 September 2010 alleging newly discovered evidence. At the request of the defense, this court issued an order on 3 September 2010 remanding the matter to the district court for a hearing on the new trial motion. The motion for new trial was denied on 6 October 2010. Though a multiple bill was filed by the state, it was dismissed by the district court on 13 January 2011.
 

 J¡FACTS
 

 On 27 October 2009, Officers Moore and Gray were on proactive patrol in New Orleans at approximately 11:00 p.m. in a fully marked police vehicle. The area that they were patrolling contained abandoned properties and was known for violent crime and illicit drug sales. Upon entering the 2300 block of Saint Andrew Street, they observed a man walking on the sidewalk to their left wearing a hooded sweatshirt. When the man saw the police vehicle he was obviously startled. He hastened his pace and repeatedly looked over his left shoulder at the police vehicle as he continued to walk down the street. As the officers watched him, the man moved his hands to the front of his sweatshirt. When they could see his left hand again, it was clenched in a fist; the man then discarded what was in his fist, and he kept walking. The officers stopped and exited their vehicle. Officer Gray called to the man to stop and approach the vehicle. He complied. Officer Gray conducted a pat down search for weapons and found none while Officer Moore went to the area where the man discarded the item and immediately saw a clear plastic bag. Inside the bag were fourteen individually wrapped pieces of what appeared to be crack cocaine. The man was arrested and advised of his
 
 Miranda
 
 rights. Officer Moore testified that Simmons was charged with possession with intent to distribute cocaine because based upon his experience, the crack cocaine had been packaged in a manner for retail sale. Nothing was found in the search incident to Simmons’ arrest. Both officers identified Simmons at trial as the man they observed discard the crack cocaine.
 

 The crime lab report prepared by Officer O’Neal was admitted into evidence. It showed that the substance discarded by Simmons tested positive for cocaine.
 

 laToni Wesley testified for the defense and stated that she has known Simmons since middle school. On the night that Simmons was arrested, she was outside standing on the corner of South Liberty and Saint Andrew Streets waiting for her sister to pick her up. Ms. Wesley saw the police arrive, and she saw them talking to Simmons. She did not see Simmons drop anything to the ground or the officers pick
 
 *528
 
 anything up from the ground. Ms. Wesley admitted that she had a prior conviction for filing false records.
 

 ERRORS PATENT
 

 A review of the record fails to show that the district court restricted parole eligibility for the first two years of Simmons’ sentences as required by La. R.S. 40:967. However, as per La. R.S. 15:301.1 A and
 
 State v. Williams,
 
 00-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with the restriction, even in the absence of the trial court’s failure to delineate the restriction. Thus, no need exists for this court to correct the sentence.
 
 See State v. Phillips,
 
 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.
 

 No other patent error was found.
 

 We discuss Simmons’ assignments of error numbers 1 and 3 in reverse order.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 By his third assignment of error, Simmons asserts that the evidence is insufficient to support his conviction. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992).
 
 State v. Marcantel,
 
 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55.
 

 The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987).
 

 To support Simmons’ conviction, the state must prove that he “knowingly” and “intentionally” possessed the cocaine with the “intent to distribute”.
 
 State v. Williams,
 
 594 So.2d 476, 478 (La.App. 4th Cir.1992). Specific intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to a reasonable inference of intent to distribute.
 
 State v. Dickerson,
 
 538 So.2d 1063 (La.App. 4th Cir.1989). Simmons urges that the state failed to prove that he had the requisite intent because the state did not show that the amount of crack cocaine seized was inconsistent with personal use.
 

 In
 
 State v. Hearold,
 
 603 So.2d 731, 735 (La.1992), the Court identified five factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance as follows:
 

 (1) [WJhether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was |sany paraphernalia, such as baggies or scales, evidencing an intent to distribute.
 

 In
 
 State v. Cushenberry,
 
 94-1206, p. 6 (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786, this court noted that the
 
 Hearold
 
 factors were “enunciated as ‘useful’ in determining whether circumstantial evidence is sufficient to prove intent to distribute,” but this court held that the evidence need not “fall squarely within the factors enunciated to be sufficient for the jury to find the requisite intent to distribute.”
 

 Here, testimony established that the area in which Officers Moore and Gray were patrolling was known for violent
 
 *529
 
 crime and illicit drug sales. The clear plastic bag seized by Officer Moore contained fourteen individually wrapped pieces of crack cocaine. The officer testified that in his experience, the cocaine was packaged in a manner for retail sale. Though no expert testimony was presented to show that the amount of drugs found in Simmons’ possession was inconsistent with personal use, the circumstantial evidence presented by the state is sufficient for the jury to find that he had the requisite intent to distribute.
 

 In
 
 State v. Fernandez,
 
 489 So.2d 345 (La.App. 4th Cir.1986), this court upheld the conviction and sentence for possession with intent to distribute where the defendant was found to be in possession of twenty-one individually wrapped bags of cocaine. In the case, the state introduced testimony from a police officer to the effect that the size and number of bags found on the defendant’s person was inconsistent with personal use.
 

 Similarly, in
 
 State v. Hollins,
 
 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, the court affirmed a defendant’s conviction and sentence for possession with intent to distribute where the defendant was discovered to be in possession of nineteen individually wrapped pieces of crack cocaine. The state introduced testimony from a police officer to the effect that the typical crack cocaine user only buys one to two rocks at a time.
 

 In
 
 State v. Davis,
 
 06-1330 (La.App. 4 Cir. 4/25/07), 958 So.2d 713, a case cited by Simmons, this court affirmed a conviction for possession with intent to distribute cocaine even though no testimony was presented that the amount of cocaine in the defendant’s possession was inconsistent with personal use.
 
 [1]
 
 The court found that the jury reasonably inferred that the defendant had the requisite intent based upon three factors: (1) eighteen of the nineteen rocks of crack cocaine found in the defendant’s possession were individually wrapped; (2) he was in possession of $1,067.00 in cash; and (3) he was arrested in an area with a high incidence of narcotics trafficking.
 

 In another case cited by Simmons,
 
 State v. Johnson,
 
 621 So.2d 903 (La.App. 4th Cir.1993), this court found that the evidence was insufficient to support the defendant’s conviction for possession of cocaine with intent to distribute despite the fact that several people approached the defendant during a one-half hour time period, hand movement was observed, and six or seven rocks of cocaine were seized from him. The court noted that no testimony was presented regarding the packaging or amount of cocaine seized. No drug paraphernalia was seized, and he possessed only $81.00.
 

 Simmons urges that his case is similar to
 
 Johnson
 
 because no evidence of actual distribution was presented and he was not found to have any cash or drug 17paraphernalia in his possession. Though this may be true, unlike
 
 Johnson,
 
 testimony established that the cocaine appellant possessed was individually packaged and that it was packaged for individual sale. Also, as in
 
 Davis,
 
 he was in an area known for illicit drug sales. The jury apparently concluded that the foregoing factors supported a finding that Simmons had the requisite intent to distribute, a conclusion that is based upon reasonable inferences by the jury and supported by the jurisprudence.
 
 [2]
 

 
 *530
 
 Therefore, we find this assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In his first assignment of error, Simmons asserts that his right to confront the witnesses against him was violated by the introduction of the criminalist report as prima facie evidence that the substance recovered by Officer Moore contained cocaine.
 

 Just prior to the beginning of trial, counsel made a motion
 
 in limine
 
 raising the issue, citing
 
 Melendez-Diaz v. Massachusetts,
 
 — U.S. —, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The state urged that the motion had to be made ten days before trial. The court asked whether the crimi-nalist could testify. The court learned that the criminalist was Harry O’Neal from St. Tammany Parish, who was not immediately available. It subsequently denied the motion
 
 in limine
 
 as untimely. Defense counsel noted his objection.
 

 Is At the time of the alleged crime and Simmons’ arrest and trial, La. R.S. 15:499 stated:
 

 A.All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. Such certificate shall list:
 

 (1) The date and time such evidence was delivered to such facility.
 

 (2) The name of the person making such delivery, and the person receiving same.
 

 (3) A brief description of the evidence.
 

 (4) The type of examination or analysis requested.
 

 (5) The name of the person making the examination or analysis.
 

 (6) The date or dates of the examination or analysis.
 

 (7) The results of the examination or analysis.
 

 B. The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis and by the person in charge of the facility.
 

 C. Criminalistics laboratories are authorized to utilize electronic signatures in order to comply with the provisions of Subsection B of this Section once final review of the certificate of analysis is completed. For purposes of this Section, “electronic signature” shall mean an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
 
 [3]
 

 ]¿La. R.S. 15:500 states:
 

 
 *531
 
 In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.
 

 At the time of the alleged crime and Simmons’ arrest and trial, La. R.S. 15:501 stated:
 

 |1ftA. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
 

 B. (1) The party against whom such certificate is offered shall be permitted to subpoena on cross-examination, the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.
 

 (2) When the attorney for the defendant, or the defendant acting in his own defense, requests that a subpoena issue to the person who performed the examination or analysis, the request shall be in writing and shall contain a certification that the attorney or the defendant intends in good faith to conduct the cross-examination.
 

 By 2010 La. Acts 693 (effective 15 August 2010), the Louisiana Legislature amended La. R.S. 15:501 to read as follows:
 

 A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than forty-five days prior to the commencement of the trial,
 
 *532
 
 give written notice of intent to offer proof by certifícate. Such notice shall include a copy of the certificate.
 

 B. The attorney for the defendant, or the defendant acting in his own defense, if not represented by counsel, may demand that the person making the examination or analysis testify by filing a written demand and serving it upon the district attorney or attorney general seeking to introduce the certificate. If such a demand is made timely as set forth below, the certificate shall not constitute prima facie proof of the facts thereon as set forth in R.S. 15:500.
 

 C. Demand for the testimony of the person making the examination or analysis shall be filed and served by counsel for the defendant, or by a defendant acting as his own counsel, within thirty days of the receipt of the notice provided for in Subsection A of this Section. The trial court may extend this thirty-day period for good [n cause shown if such request is made prior to the expiration of the thirty days.
 

 D. If no request for additional time is made prior to the expiration of the thirty-day period, an extension of time in which to make such a demand may be made only upon a showing of exceptional circumstances. Any allegation that such circumstances exist shall constitute a preliminary plea on the defendant’s behalf for the purposes of Louisiana Code of Criminal Procedure. The demand shall be made in writing and notice shall be served on the district attorney or the attorney general prosecuting the matter. The court shall conduct a contradictory hearing to determine if the extension is warranted.
 

 E. The filing of a demand by the defendant does not prevent the admission of the certificate or its contents in any other manner otherwise appropriate pursuant to the Louisiana Code of Evidence or its aneillaries.
 

 Here, the state’s notice of intent to introduce into evidence the state’s criminalist report as prima facie proof was timely filed on 24 February 2010 under La. R.S. 15:499-501 as it read at the time of Simmons’ trial. The defense did not request that a subpoena be issued within five days prior to trial and only noted its objection on the day of trial, 18 May 2010. After the objection was denied, the matter proceeded to trial.
 

 Melendez-Diaz
 
 was a drug case in which the prosecution, pursuant to Massachusetts law, sought to offer sworn affidavits of analysts at a state laboratory attesting that the substance that had been seized from the accused and they analyzed was cocaine. The defense objected based on Sixth Amendment | ^Confrontation Clause grounds, arguing that the burden was on the prosecution to produce the witnesses. The Court found that the affidavits in question fell “within the ‘core class of testimonial statements’ ” described in
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as being “covered by the Confrontation Clause”:
 

 As we stated in
 
 Crawford:
 
 “Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy.” 541 U.S., at 56, 124 S.Ct. 1354, 158 L.Ed.2d 177. Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but beeause-having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial-they are not testimonial. Whether or not they qualify as business or official rec
 
 *533
 
 ords, the analysts’ statements here-prepared specifically for use at petitioner’s trial-were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.
 

 Respondent asserts that we should find no Confrontation Clause violation in this case because petitioner had the ability to subpoena the analysts. But that power — whether pursuant to state law or the Compulsory Process Clause — is no substitute for the right of confrontation. Unlike the Confrontation Clause, those provisions are of no use to the defendant when the witness is unavailable or simply refuses to appear. See, e.g.,
 
 Davis [v. Washington,
 
 547 U.S., 813,] 820, 126 S.Ct. 2266 [165 L.Ed.2d 224 (2006) ] (“[The witness] was subpoenaed, but she did not appear at ... trial”). Converting the prosecution’s duty under the Confrontation Clause into the defendant’s privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses. [Emphasis supplied.]
 

 Melendez-Diaz, 129 S.Ct. at 2539-2540.
 

 This court has never addressed the current issue directly. The Louisiana First and Second Circuits have found that the use of the criminalist report did not violate the Confrontation Clause, specifically distinguishing the affidavit at issue in
 
 Melendez-Diaz
 
 from the system used in Louisiana.
 
 State v. Beauchamp,
 
 10-0451 (La.App. 1 Cir. 9/10/10), 49 So.3d 5;
 
 State v. Dukes,
 
 46,029 (La.App. 2 Cir. 1/26/11), 57 So.3d 489, 2011 WL 228645.
 
 [4]
 

 The
 
 Dukes
 
 court summarized the reasoning used in
 
 Beauchamp
 
 as follows:
 

 In
 
 State v. Beauchamp, supra,
 
 the Louisiana first circuit court of appeal distinguished the Massachusetts law permitting the use of “certificates of analysis” as proof, which was struck down in
 
 Melendez-Diaz
 
 from Louisiana’s notice-and-demand statutory scheme for use of an analyst’s report as evidence. The court noted that
 
 Melendez-Diaz,
 
 itself recognized that other states’ “notice-and-demand statutes” did not shift the burden by converting the prosecution’s duty under the Confrontation Clause into the defendant’s privilege under state law or the Compulsory Process Clause. Because “[t]he defendant always has the burden of raising his Confrontation Clause objection,” the court reasoned “notice-and-demand statutes simply govern the time within which he must do so.”
 
 State v. Beauchamp,
 
 49 So.3d at 8, citing
 
 Melendez-Diaz,
 
 — U.S. at —, 129 S.Ct. at 2541.
 

 In addressing the “notice-and-demand” scheme set forth in La. R.S. 15:499 et seq., the
 
 Beauchamp
 
 court concluded that the admission of a scientific analysis report in accordance therewith “did not violate MelendezDiaz.... ” as the scheme “merely requires a defendant to exercise his Confrontation rights prior to trial.”
 
 State v. Beauchamp,
 
 49 So.3d at 9-10.
 

 The
 
 Beauchamp
 
 court also noted that in a
 
 pre-Melendez-Diaz
 
 opinion, the Louisiana Supreme Court had concluded that Louisiana’s “notice-and-demand” statutes were constitutional under
 
 *534
 

 Crawford v. Washington, supra.
 
 See
 
 State v. Cunningham,
 
 2004-2200 (La.6/13/05), 903 So.2d 1110. In rejecting the challenge to the scheme’s constitutionality, the Louisiana Supreme Court noted that to defeat the use of the certificate without the analyst, the defendant need only request a subpoena of the individual five days prior to trial. The court held this requirement did not “infringe upon defendant’s constitutional right to confrontation.”
 
 State v. Cunningham,
 
 903 So.2d at 1121.
 

 Dukes,
 
 pp. 10-11, 57 So.3d at 494-95.
 

 Applying
 
 Beauchamp,
 
 the
 
 Dukes
 
 court found that
 
 Melendez-Diaz
 
 was not controlling in cases where the state had followed the proper procedure under La. R.S. 15:499,
 
 et seq.,
 
 and that the admission of the certificate of analysis into evidence at trial did not violate a defendant’s rights under the Confrontation Clause by noting:
 

 Unlike the scenario in
 
 Melendez-Diaz,
 
 however, the state’s duty under the Confrontation Clause is not converted into the defendant’s privilege under the Compulsory Process Clause. Under the Massachusetts law, the state’s use of the certificate of analysis was not dependent on the defendant’s failure to object; the state apparently could use the certificate as prima facie proof of its contents regardless of whether the defendant subpoenaed the analyst. In Louisiana, the mere request for a subpoena by the defendant five days prior to trial rendered the certificate useless to the state as prima facie proof of its contents or of proper custody. La. R.S. 15:501(B)(1). Accordingly, an unavailable or uncooperative analyst becomes the state’s problem in meeting its burden of proof and not the defendant’s in exercising his right to confrontation.
 

 Dukes,
 
 p. 13, 57 So.3d at 495-96.
 

 In
 
 State v. Cunningham,
 
 04-2200 (La.6/13/05), 903 So.2d 1110, the Court found La. R.S. 15:499,
 
 et seq.,
 
 did not “infringe” upon an accused’s constitutional right to confront witnesses against him.
 
 Id.,
 
 p. 17, 903 So.2d at 1112. The Court opined that the accused “merely has to subpoena the person who performed the | ^examination or analysis of the evidence. If the defendant requests the subpoena at least five days prior to trial or if the person subpoenaed responds to the subpoena, the provisions of the statute provide that the certificate shall not be prima facie proof of its contents or proper custody.”
 
 Id.
 
 The Court analogized La. R.S. 15:499,
 
 et seq.,
 
 to a case where the state offers hearsay evidence to which the defendant fails to contemporaneously object; in such a case, the hearsay is allowed into evidence. The holding was premised on the theory that a state may establish reasonable procedures to be followed in order to exercise a right guaranteed by the constitution, citing
 
 Poulos v. New Hampshire,
 
 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953).
 

 In the case at bar, the state complied with the statutory requirements of La. R.S. 15:499,
 
 et seq.,
 
 to-wit, a certified copy of the lab report was included with the notice of intent as required by law and the defense did not timely request that the criminalist be subpoenaed.
 

 We are constrained to follow the
 
 Melendez-Diaz
 
 rationale rather than the Louisiana Supreme Court’s decision in
 
 Cunningham
 
 because the United States Supreme Court has now specifically held that the statutory procedure for introduction of the criminalist’s report over the objection of the defendant in lieu of the criminalist’s live testimony violates the Confrontation Clause of the United States Constitution. Further, in light of
 
 Melendez-Diaz,
 
 and unlike our colleagues in the First and Sec
 
 *535
 
 ond Circuits, we find that the statutory scheme in effect at the time of Simmons’ trial violated Simmons’ rights under
 
 Melendez-Diaz.
 
 That is, our reading of
 
 Melendez-Diaz
 
 is that the Confrontation Clause does
 
 not
 
 allow the burden to be shifted to the defendant to call as a witness the criminalist, a witness obviously against him in view of the analysis report of the alleged illegal substance. The burden always remained with the state to call the criminalist as a 11Rlive-witness.
 
 [5]
 
 Thus, we find that the admission of the certificate of analysis into evidence at trial did violate Simmons’ rights under the Confrontation Clause. This assignment of error has merit.
 

 ASSIGNMENT OF ERROR NUMBER 2.
 

 In his second assignments of error, Simmons asserts that the district court erred by denying his motion for new trial which is allegedly based upon newly discovered evidence. In light of our holding that Simmons’ first assignment of error has merit, thus requiring a reversal of his conviction, we pretermit a discussion of his second assignments.
 

 CONCLUSION
 

 For the foregoing reasons, we reverse the conviction and sentence of Dion P. Simmons and remand this matter to the trial court for further proceedings.
 

 REVERSED; REMANDED.
 

 [1]
 

 . The Louisiana Supreme Court granted the defendant’s writ in part and denied it in part. The writ was granted insofar as the district court restricted parole eligibility on the defendant’s entire sentence.
 
 State v. Davis,
 
 07-1208 (La. 12/14/07), 970 So.2d 982.
 

 [2]
 

 . For purposes of this assignment of error, we presume that the criminalist's report was
 
 *530
 
 properly admitted into evidence. However, as will be observed from our discussion of Simmons’ first assignment of error below, the criminalist's report was not properly admitted which results in a reversal of his conviction.
 

 [3]
 

 . As amended by 2010 La. Acts 693 (effective 15 August 2010), La. R.S. 15:499 now provides:
 

 A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of
 
 *531
 
 examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. Such certificate shall list:
 

 (1) The date and time such evidence was delivered to such facility.
 

 (2) The name of the person making such delivery, and the person receiving same.
 

 (3) A brief description of the evidence.
 

 (4) The type of examination or analysis requested.
 

 (5) The name of the person making the examination or analysis.
 

 (6) The date or dates of the examination or analysis.
 

 (7) The results of the examination or analysis.
 

 B.The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis.
 

 C. Criminalistics laboratories are authorized to utilize electronic signatures in order to comply with the provisions of Subsection B of this Section once final review of the certificate of analysis is completed. For purposes of this Section, "electronic signature" shall mean an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
 

 D. All organizations, entities, or persons issuing certificates as set forth in this Section shall retain and provide upon written request all of the following:
 

 (1) A description of each analyst’s educational background, training, and experience.
 

 (2) A listing of all accreditations held by the laboratory or individual.
 

 [4]
 

 . Both cases involved La. R.S. 15:499,
 
 et seq.,
 
 prior to the amendments.
 

 [5]
 

 . Although the issue is not presently before us, one could reasonably argue that the legislature's enactment 2010 La. Acts 683 that amended La. R.S. 15:501 was done to cure perceived or potential problems created by
 
 Menendez-Diaz
 
 to the former law.