PAUL A. BONIN, Judge.
| lorian Carter was tried along with his co-defendant, Tysean Riles, for attempted simple burglary of an inhabited dwelling. See La. R.S. 14:27 and La. R.S. 14:62.2. A unanimous jury verdict found both defendants guilty as charged. Mr. Carter now appeals his conviction, making two assignments of error; he does not appeal his sentence.[1] We are limiting our decision, however, to one aspect of the motion for new trial. Mr. Carter argues that the trial judge erroneously failed to consider video evidence proffered at the hearing on his motion for new trial.
Because we find that “evidence” which Mr. Carter argues would have impeached the testimony of the arresting detective and which has been received by us as a proffer or offer of proof is of such materiality that “the ends of justice” require the district court to consider it in connection with the motion for new trial, we reverse the trial judge’s ruling excluding that evidence and remand for a further hearing on the motion for new trial.

J¿

We turn first to a brief consideration of the issues developed during the trial in light of the defense made to the jury in order to contrast the importance of the evidence submitted on the proffer.
The prosecution charged Mr. Carter with attempted simple burglary of an inhabited building. Simple burglary of an inhabited dwelling is “the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein.” La. R.S. 14:62.2. “Attempt” is defined by La. R.S. 14:27 A:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Also, “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, [or] aid and abet in its commission, ..., are principals.” La. R.S. 14:24.
Mr. Carter’s defense was that he had not entered the apartment complex with the intention of burglarizing one of the apartments, but instead to go swimming in the pool albeit without the owner’s permission. See La. R.S. 14:63 B (criminal trespass).
No one testified that Mr. Carter directly committed the act of trying to enter the apartment; the prosecution contended, however, that Mr. Carter was one of the lookouts while another person in his group tried to enter an apartment through the ^window. Notably, the occupant of the apartment, Crystal Burke, testified that she had not observed any damage to her *701 apartment’s window and was unaware that a burglary had been attempted until some time much later when the police contacted her.
II
With that background, we turn to the evidence at the trial.
Detective Reno Bax and his partner, Detective Robert Barrere, testified that they were conducting a surveillance of The Saulet, a large apartment complex. Although they do not often engage in prolonged surveillance, if the need arises, the police do target certain areas. On the night in question, April 8, 2010, The Saulet was being targeted for surveillance because of recent thefts and burglaries. The detectives were dressed in street clothes and were not in traditionally marked police cars. Det. Bax was especially familiar with this apartment complex because he worked special paid police details at The Saulet and functioned as its 24-hour “courtesy” officer.
The surveillance began early that day in the morning and lasted all day. After 10:00 p.m., the detectives observed a group of seven young males walking towards downtown on Annunciation Street. The detectives noted that there were no stores in the direction the group was walking and observed that the males looked young, as if they were not yet “bar age.” Of the seven people in the group, five were juveniles; only Mr. Carter and his co-defendant were majors.
The detectives observed the group approach the perimeter fence of The Saulet. The detectives parked on Race Street and continued to observe the group walk in the direction of their unmarked police vehicle. The detectives testified that they then watched the group as they climbed over a drive-in gate on Race Street in |4order to gain access to The Saulet. This prompted the detectives to drive to the other side of the complex to observe the group further. Once on the other side of the fence, the group huddled next to a dumpster and appeared to discuss a plan. Thereafter, one of the five juveniles in the group proceeded to remove the screen from the window of one of the first-floor apartments. The detectives testified that the group acted in a very coordinated fashion: while one juvenile pried the screen off a window, the rest of the group, including Mr. Carter, spread out in a localized area and appeared to act as “lookouts.”
The detectives then identified themselves by shouting, “Stop, Police.” All seven of the subjects ran out of the complex and continued running in a group down Chippewa Street. The detectives radioed for backup while giving chase on foot. Other police units arrived, and all the subjects were surrounded and apprehended.
Detective Bax identified Mr. Carter and Mr. Riles in the courtroom. Det. Bax further testified that the only damage to the apartment was to the screen, which was bent away from the window. When cross-examined about whether or not the screen had been completely removed or halfway removed from the window, the detective testified that he could not remember.
Detective Barrere stated that he and Det. Bax went back to the apartment to contact the resident, but no one answered. The detectives then contacted the management of the complex, which identified the apartment as belonging to Crystal Burke. Ms. Burke testified that on April 8, 2010, she resided alone in a one bedroom apartment at The Saulet in New Orleans. She was not at home on April 8, 2010 at 10:00 p.m., and she had not given anyone permission to enter her apartment that day. Moreover, Ms. Burke testified that she *702 had never heard the | Bname “Torian Carter” or the names of any other member of the group prior to their arrests.
Ms. Burke identified her apartment address as 810 Euterpe Street, but the bill of information identified her address as 805 Euterpe Street. The apartment number, however, was constant. And Ms. Burke testified that her apartment had one window in the bedroom, which was near a dumpster.
Mr. Riles’ cousin, who was twelve years old at the time of the incident, was a witness for Mr. Carter’s co-defendant. He testified that Mr. Riles and he were with the group walking down Annunciation Street and that the group cut through the park and then cut across Race Street to the gate of the apartment. He contradicted the testimony of Det. Bax, testifying that the group did not climb the fence but opened the gate with the combination to the keypad. Importantly, Det. Bax on rebuttal claimed that no such keypad access existed.
During its deliberations the jury expressed an interest in viewing evidence of the keypad. After the guilty verdict, Mr. Carter later attempted to introduce photographic and video evidence that the gate did in fact have a keypad in order to refute the detective’s testimony. While the trial judge viewed the photographic evidence, he refused to view the video evidence.
Mr. Riles’ cousin also testified that certain members of the group that entered The Saulet intended to burglarize an apartment. But he also testified that although Mr. Carter was with the group, he was not part of the plan. He testified that Mr. Carter wore a white T-shirt and blue or black swimming trunks or basketball shorts. The clothing is relevant because, as we noted earlier, Mr. Carter has asserted that he was only in the apartment complex to go swimming.
_kin
Mr. Carter argues that the district court erred when it denied his motion for new trial. Based upon some photographs and a video which the defense procured after the jury’s verdict, Mr. Carter contends that the prosecution used the mistaken or even perjured testimony of Det. Bax to discredit the testimony of Mr. Riles’ cousin. He argues that the photographic and video evidence contradicted the detective’s testimony and established inaccuracy or lying. Mr. Carter further contends that because Det. Bax works a private-pay detail as a courtesy officer with The Saulet, he had a personal interest in securing a conviction.
At the outset we note that Mr. Carter properly preserved for our review the video evidence that the trial judge would not consider at the hearing on his motion for new trial.[2] See La. C.E. art. 103 A(2), and La.C.Cr.P. art. 921 (“A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.”) See also State v. Magee, 11-0574, p. 61 (La.9/28/12), 103 So.3d 285, 318.
Having reviewed the proffered video, which clearly shows a keypad and a person entering a code which resulted in the gate opening, we have no doubt that the trial judge should have viewed this evidence *703 before deciding to deny the motion for new trial.
A trial judge is entrusted -with the discretion to grant a new trial when he is “of the opinion that the ends of justice would be served by the granting of a new 17trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.” La.C.Cr.P. art. 851(5). Here, in light of the special knowledge that a reasonable person would expect Det. Bax to possess about The Saulet’s entry and exit facilities, the video evidence would tend— in the absence of some explanation by Det. Bax — to cause a reasonable person to suppose that an injustice has been done to Mr. Carter. See La.C.Cr.P. art. 851. But that determination is the province of the trial judge and not us. We are only holding that the trial judge erroneously failed to view the video evidence; we are not concluding that the trial judge abused his discretion in denying the motion. See State v. Guillory, 10-1231, p. 4 (La.10/8/10), 45 So.3d 612, 615. Thus, the relief to which Mr. Carter is entitled is a remand to the trial court to conduct a further hearing on the motion for new trial, during which the trial judge is instructed to view the -video evidence.
REMAND INSTRUCTIONS
We remand this matter in its entirety to the district court. The trial court shall reopen the hearing on the motion for new trial during which it is instructed to view the video evidence previously proffered. The trial court shall also permit the parties to present additional testimony or evidence to explain the apparent discrepancy or consistency between the video evidence, on the one hand, and the testimony of Detective Bax and Mr. Riles on the other hand.
Upon the conclusion of the hearing and the trial judge’s ruling on the motion, if the ruling is adverse to Mr. Carter, he may file anew for an appeal of his conviction and sentence.
I ¡¿DECREE
The ruling of the trial judge denying the admissibility of the video evidence at the hearing on the motion for new trial is vacated. We remand the motion for new trial to the district court in accord with our remand instructions, reserving unto the defendant, Torian Carter, to file anew an appeal of his conviction in the event of an adverse ruling on his motion.
REMANDED

. In his two assignments of error, see La. C.Cr.P. art. 920(1), Mr. Carter contends, first, that the district court erred in denying his motions for new trial and for post-verdict judgment of acquittal and, second, that the evidence was insufficient to support a guilty verdict under the well-known Jackson v. Virginia standard of review. We would ordinarily first consider the Jackson v. Virginia insufficiency of evidence claim (raised also by the motion for judgment of acquittal). See State v. Hearold, 90-2094 (La.1992), 603 So.2d 731, 734. We are pretermitting, however, the insufficiency of evidence claim because we are allowing the defendant to re-urge that ground in the event that the trial court on remand does not grant his motion for new trial.

. The hearing transcript was clear that a proffer of the video had been allowed, but the record when lodged did not contain the proffered materials. Mr. Carter's appellate counsel took no step to obtain supplementation of the record even though the excluded video formed a basis of the assignment of error, and it was necessary for us to order supplementation in order to view the video.