STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-866

STATE OF LOUISIANA

VERSUS

ANTHONY WAYNE DENNIS, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 30011-09
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED.

John Foster DeRosier
14th JDC District Attorney
Carla Sigler
Karen C. McLellan
Assistant District Attorneys
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
     State of Louisiana

Edward John Marquet
Louisiana Appellate Project
Post Office Box 53733
Lafayette, LA 70505-3733
(337) 237-6841
COUNSEL FOR DEFENDANT-APPELLANT:
     Anthony Wayne Dennis, Jr.

**PICKETT, Judge.**

## FACTS

On October 27, 2009, at approximately 9:45 a.m., Felicia Richmond was sitting at her desk directly in front of a large window at the First Federal Bank location on Highway 14 in Lake Charles. A man opened the door of the building and held it open while another man entered the building carrying a black gun with a "barrel kind of big." Ms. Richmond hid under her desk.

Ms. Richmond had seen the men earlier when they tried to enter the bank around 8:50 a.m., before the bank opened for the day. One of the men was taller and heavier than the other. The shorter man was five feet five inches to five feet six inches tall, approximately 170 pounds, in his "mid to late 20's," with a "[l]ight brown complected [sic]. . . slim face." When the men found the bank closed, they walked across the street toward Burger King, and Ms. Richmond "just got a real good look" at them, particularly the shorter man. Ms. Richmond said she was "just looking dead in his face." About an hour later, she saw them return from the direction of Burger King, and they passed in front of her window a third time. She testified the shorter man was the man who had the gun when the two men entered the bank.

Bank teller Jocqueline "Renay" Jones testified that the man in the bank held what appeared to be a black, semi-automatic handgun. He had a black plastic bag and told Ms. Jones to put the money in it. The two men made away with "$8,500 and some odd dollars."

About an hour and a half after the robbery, Ricky Foreman, a First Federal employee, received emailed images from Garland Prejean, vice president and security officer at Cameron State Bank, of a suspicious person in that bank the day before this robbery. The color photograph was about four inches by six inches in

size and "was kind of grainy . . . but it was a picture of a person sitting at a desk with his left hand signing a check."

Ms. Richmond testified that she "looked at it, and [she] didn't think it was him." She was in Mr. Foreman's office "not for a full minute" when she looked at the images, and she looked at the screen "maybe what, 15 seconds." She believed the image showed someone younger and lighter complexioned than the man she saw. She testified that "[t]he picture looked like a teenager[]" to her.

Detective Richard Harrell of the Lake Charles Police Department was the lead investigator of the armed robbery. He interviewed the five bank employees, each of whom gave a physical description of the robbers and described the weapons. They all viewed a form showing several different types of handguns, and they all chose a .45 caliber semi-automatic as what looked most like the handgun the suspects carried.

The day after the robbery, Ms. Richmond viewed a photo lineup. She was "a hundred percent" certain the photo she chose – a photo of the defendant, Anthony Wayne Dennis, Jr. – was of the man she saw walk in front of her window. She based her identification on seeing the man three times before he entered the bank. Ms. Richmond identified the defendant in the courtroom as the same man.

When Detective Harrell learned Ms. Richmond may have seen the Cameron State Bank photographs, he spoke with her a second time, fearing "the line-up may have been tainted." He verified what she had seen, and she said "it had no effect" on her identification of the defendant. Ms. Richmond told Detective Harrell the first time she saw the robber was when the detective showed her the photo lineup, and she chose the defendant in a matter of seconds. The defendant's counsel did not object to the questions or the testimony.

2

When defense counsel asked Ms. Richmond on cross-examination, "I bet if you hadn't seen that picture the day before you looked at that photo line-up, you wouldn't have been able to pick this kid out of a photo line-up, right?," she responded, "Wrong." Ms. Richmond had "[n]o doubt" the man who walked past her window and who robbed the bank was the defendant. She chose the defendant from the lineup because "[i]t looked like the person that walked in front of [her] window." She denied her identification was influenced by the images she saw on the computer. When she compared the Cameron State Bank images and the photo lineup at trial, Ms. Richmond testified they were of the same man.

Jennifer Hoffpauir, evidence officer for the Lake Charles Police Department, testified she was "involved in the execution of the search warrant" the day after the robbery. She found a black Marksman BB gun in the top drawer of a filing cabinet in a shed at the defendant's residence. She also recovered a .38 Smith and Wesson revolver from a shelf in the living room closet, a .357 Colt revolver in the top drawer of a television cabinet in a bedroom, a .380 Cobra pistol beneath a bed, and a .22 RG revolver, also from beneath the bed. Officer Hoffpauir did not know who owned the firearms, whether they were used in the robbery, or whether they were stolen. Detective Harrell testified the Marksman BB gun introduced into evidence was similar in size, shape, and color to a .45 caliber semi-automatic handgun.

The defendant was charged by bill of information on November 18, 2009, with armed robbery, a violation of La.R.S. 14:64, and armed robbery with a firearm, a violation of La.R.S. 14:64.3. The state *nolle prossed* the charge of armed robbery with a firearm on October 14, 2011.

The defendant filed a motion to suppress his identification by Felicia Richmond on January 11, 2010. The trial court denied the motion on February 5,

2010, finding Ms. Richmond "was unequivocal on her identification" of  the defendant.

The jury unanimously found the defendant guilty of the lesser offense of first degree robbery on October 14, 2011.  The trial court sentenced him to sixteen years at hard labor without benefit of probation, parole, or suspension of sentence on October 28, 2011.  The defendant now appeals his conviction, asserting three assignments of error.

## ASSIGNMENTS OF ERROR

1.    Trial court erred in allowing the introduction of physical evidence, i.e. unrelated weapons, that unduly prejudiced the trier of fact.

2.    The trial court erred in permitting Detective Richard Harrell to testify to the hearsay declarations of Felicia Richmond.

3.    The photographic line-up was tainted by a prior viewing of the defendant by the sole eyewitness who observed the suspect's uncovered face and therefore the evidence of identification was insufficient to establish the guilt of the defendant beyond reasonable doubt.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record.  After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER THREE

The defendant argues the photo lineup was tainted by Ms. Richmond's prior viewing of the e-mailed images from Cameron State Bank. Thus, her identification was insufficient to establish the defendant's guilt beyond a reasonable doubt and there is, therefore, insufficient evidence to support the conviction.  In accordance with *State v. Hearold*, 603 So.2d 731 (La.1992), we consider this assignment of error first.

4

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing '*all of the evidence* . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. 120, ___, 130 S.Ct. 665, 674 (2010) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

Ms. Richmond testified that the selection from the lineup matched the man who walked by her window, not the man in the e-mailed images. She identified the defendant at trial as the man who walked by her window, not as the man in the images. She was "[a] hundred percent" certain of her identification at the time she viewed the lineup and at trial. She had "no doubt" the defendant was the man who walked past her window and robbed the bank.

The defendant did not object to Ms. Richmond's testimony about seeing the images or the photo lineup, although he did object to the introduction of the lineup itself into evidence. He thoroughly cross-examined her about the images and the lineup.

The defendant's argument would carry more weight had Ms. Richmond actually believed the man in the images was the same man who walked by her

window, and she had linked the images to him. However, she believed the images were *not* of the defendant, so there was no reason for her to be influenced by them. She did not know the defendant's identity at the time she viewed the lineup, and she did not at the time believe the images she had previously viewed were of him.

This court rejected a similar argument in *State v. Anderson*, 11-106 (La.App. 3 Cir. 6/1/11), 66 So.3d 568, *writ denied*, 11-1493 (La. 9/23/11), 69 So.3d 1167. In *Anderson*, a rape victim saw the defendant's picture on television and in the newspaper as a suspect in another rape prior to choosing him from a photo lineup. She testified, however, that she already knew the defendant's identity when she saw the news reports. Although this court found the issue was not properly preserved for appeal, it also noted any assumed error was harmless. The victim identified the defendant in court, DNA testing indicated the presence of the defendant's sperm, and the jury was able to consider the defendant's thorough cross-examination of the victim and the detective regarding the photo lineup.

As in *Anderson*, 66 So.3d 568, the jury was able to consider the defendant's thorough cross-examination of Ms. Richmond on this topic and evaluate her credibility. The defendant has presented no basis to support his claim that Ms. Richmond's prior viewing of the e-mailed images influenced her identification of the defendant in the photo lineup. Viewing the evidence in a light most favorable to the prosecution, we find the jury could reasonably find the evidence sufficient to support the defendant's guilt. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues the trial court erred in admitting into evidence weapons unrelated to the crime and that error unduly prejudiced the jury. He concedes the Marksman BB gun was properly admitted, but he contends the other weapons were not relevant or connected to the bank robbery.

6

Louisiana Code of Evidence Article 402 allows all relevant evidence to be admitted. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401.

In *State v. Mims*, 97-1500 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, *writ denied*, 00-2255 (La. 6/22/01), 794 So.2d 781, *and writ denied,* 00-2270 (La. 6/22/01), 794 So.2d 782, the defendants were convicted of manslaughter. Law enforcement agents seized a number of guns and ammunition in connection with other crimes, but the weapons were unrelated to the killing for which the defendants stood trial. However, the trial judge allowed testimony that the defendants were in possession of three AK-47s, two 12-gauge shotguns, a .44 magnum handgun, and two pistols, along with magazines, ammunition and bayonets, when the defendants were armed with only 9 mm handguns at the time of the homicide.

The fourth circuit noted:

> Considering the facts and circumstances of the instant case, it is not unreasonable to argue that the minimal probative value of Officer Leary's detailed technical testimony concerning the weapons and accoutrements was substantially outweighed by its prejudicial effect. However, we are unwilling to say that the trial court, which was in the optimal position to evaluate the impact of the testimony on the jurors, abused its considerable discretion in applying La. C.E. art. 403. Moreover, even if we assume that the trial court did abuse its discretion, we must conduct a harmless error analysis, determining whether the admission of the testimony was harmless beyond a reasonable doubt.

*Id*. at 71-72 (citations omitted).

Here, the defendant did not object to testimony about the weapons seized at his home, but he did object to the introduction of the firearms into evidence. The trial court overruled the objection but noted the state must still "establish whether the items meet the elements of the offense." The trial judge determined the state

presented a foundation for introduction by showing the firearms were seized at the defendant's residence pursuant to a search warrant concerning an armed robbery suspect. Regarding the issue of relevancy, the trial judge said, "[t]he relevancy tends to prove or disprove a fact that is at issue, and the evidence goes both ways with regard to that, and that will be for either of you to argue at some point when it becomes apparent."

The jury was aware the other weapons were seized from the defendant's home because Officer Hoffpauir and Detective Harrell testified about them without objection from the defendant. Since testimony about the weapons was already in the record, the defendant has shown no reason that the introduction of the weapons themselves resulted in "unfair prejudice, confusion of the issues, or misleading the jury" as contemplated by La.Code Evid. art. 403. Thus, even if introduction of the weapons was erroneous, the error was harmless and did not affect the outcome of trial.

The defendant further complains that comments during the closing argument of the state's counsel "smack of an attack on the character of the accused." The state's attorney told the jury "the purpose of putting all these other guns into evidence is so you wouldn't miss the point that this is a household, yes, with several weapons, not necessarily unusual. But I do find it unusual that all these handguns were found in the residence."

The defendant failed to object to these comments at the time they were made and may not raise an issue concerning them for the first time on appeal. *State v. Simon*, 10-1111 (La.App. 3 Cir. 4/13/11), 62 So.3d 318, *writ denied*, 11-1008 (La. 11/4/11), 75 So.3d 922; Uniform Rules—Courts of Appeal, Rule 1–3. The defendant's assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

The defendant contends the trial court erred in permitting Detective Harrell to testify to hearsay declarations of Ms. Richmond. Detective Harrell testified at trial about the investigation he conducted as a result of the robbery. The defendant objected on grounds that "any description that is given to an officer by a third party is information that was received from a third party" and is hearsay. The trial judge allowed the testimony because it was not received to prove the truth of the matter but rather to show the "basis for the actions that the officer took thereafter." Thus, it was not hearsay. The trial judge admonished the jury accordingly.

Detective Harrell then testified when he returned to the bank to interview Ms. Richmond, she told him about the two men who approached the bank around 8:50 a.m. that day. The defendant's counsel again objected on grounds of hearsay. The trial judge ruled the testimony was offered to provide "a basis for the actions taken by the officer," not to prove the truth of the matter, and allowed the testimony.

This court exhaustively discussed the issue of a police officer's testimony of statements related by eyewitnesses who also testified at trial in *State v. Jones*, 08-687, pp. 12-13 (La. 12/10/08), 999 So.2d 239, 248-49:

> "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). However, Louisiana jurisprudence has consistently held that investigating police officers may testify as to statements purportedly given to them, which help to explain the sequence of events that lead to an arrest and not to prove the truth of the matter. *See State v. Watson*, 449 So.2d 1321 (La.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); *State v. Broadway*, 96-2659 (La.10/19/99), 753 So.2d 801, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000); and *State v. Blank*, 04-204 (La.4/11/07), 955 So.2d 90, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).

> In *Broadway*, however, the supreme court noted:

> Information about the course of a police investigation is not relevant to any essential elements of the charged crime, but such information may be useful to the prosecutor in "drawing the full picture" for the jury. However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. *State v. Wille*, 559 So.2d 1321, 1331 (La.1990); *State v. Hearold*, 603 So.2d 731, 737 (La.1992). As this Court emphasized in *Hearold*, 603 So.2d at 737,

>> Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.

*Broadway*, 753 So.2d at 809.

In *Jones*, we found that the only testimony that was arguably barred under the hearsay rule was the investigating officer's restatement of the out-of-court statements of two witnesses who also testified at trial. As both of those witnesses were subject to cross-examination, we found that there was no reasonable possibility that those out-of-court statements attributed to the verdict. We affirmed the conviction.

Detective Harrell's testimony from his investigative report paralleled the testimony the jury would later hear from Ms. Richmond. It did not include his thoughts, opinions, or theories about Ms. Richmond's credibility or dependability as a witness or about the defendant's guilt. Ms. Richmond was subject to rigorous cross examination. The testimony of Detective Harrell was offered only to explain the sequence of events that led to the defendant's arrest. This assignment of error lacks merit.

## **CONCLUSION**

The defendant's conviction is affirmed.

**AFFIRMED.**