Judgment rendered May 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,833-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ISAIAH M. CHILDS                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 355,654

Honorable Roy L. Brun, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Annette Roach

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

JOSHUA K. WILLIAMS
VICTORIA WASHINGTON
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before MOORE, GARRETT, and ROBINSON, JJ.

**MOORE, C.J.**

The defendant, Isaiah Childs, was found guilty as charged of armed robbery. He was sentenced to 75 years at hard labor, without benefit of probation, parole, or suspension of sentence. Childs now appeals his conviction and sentence asserting insufficiency of the evidence, the lack of a unanimous jury verdict to convict, and violation of his equal protection rights by the court by denying his *Batson* challenges during jury selection. Our error patent review confirms that the verdict for conviction was 10-2. La. C. Cr. P. art. 920; *State v. Corn*, 19-01892 (La. 6/3/20), 296 So. 3d 1043, 1044.

Following our review of the defendant's sufficiency claim, we vacate the conviction and sentence, and we remand the matter to the trial court for a new trial, in accord with *Ramos v. Louisiana*, --- U.S ---, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); and *State v. Cohen*, 19-00949 (La. 1/27/21), 2021 WL 266645.

### FACTS

Childs was initially charged by bill of information with one count of armed robbery with a firearm in violation of La. R.S. 14:64, and one count of attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1. The bill was subsequently amended deleting the latter charge.

The trial record shows that on February 4, 2018, Jennifer Reynolds, a resident of Bethany, Louisiana, posted a notice on an online garage sale site that she was selling a woman's Louis Vuitton backpack and other items, including a wallet. She received a text response via Facebook Messenger from "Isaiah," who has a Facebook page belonging to the defendant, Isaiah Childs. Childs said that he was interested in buying the backpack for a

girl. Jennifer responded with her phone number and agreed to meet Childs at 1442 Andrew Avenue, in Shreveport's Lakeside neighborhood.

Although darkness comes early in February, Jennifer testified that it was still very light outside in the late afternoon around 4:30 p.m. when she and her husband, Daniel Reynolds, drove to the Andrew Avenue address.[1] Their two young children were also in the back seat of the Cadillac Escalade SUV. As they pulled up to the street address, Jennifer saw Childs sitting on the concrete terrace stairs in front of the house. Childs was wearing a red hoodie with the hood covering the back, sides, and top of his head. Daniel stopped the vehicle in front of the house and left the engine running, but remained in the vehicle with the children.

Jennifer got out of the passenger side door carrying the backpack in hand, and met Childs halfway between the stairs and vehicle. She showed him the backpack, which he took from her. He said he also wanted the wallet that she had listed.

Childs followed Jennifer back to the SUV to retrieve the wallet on the floorboard behind the driver's seat. When she turned around, however, Childs was pointing a large black pistol at her head. He demanded her personal wallet as well. Jennifer told Childs that she had to go around to the other side of the vehicle to get it; Childs looked at her children in the back seat and alternately pointed the gun at each, in turn, saying to her, "Which one, bitch, make it fast."

---

[1] Daniel also testified that it was still light outside – around dusk, close to the Super Bowl kickoff – though he estimated the time at between 6:00 and 6:30 p.m. We take judicial notice that sunset occurred in Shreveport at 5:51 p.m. on February 4, 2018, and the Super Bowl game started at 5:30 p.m. CST that day.

While these events were occurring, Daniel was looking at his cell phone, trying to watch a Super Bowl pregame show, and did not notice that his wife was being held up. As Jennifer retrieved the wallet and was closing the rear door, she quietly mouthed to Daniel that the man had a gun on her. Reacting instantly, Daniel opened his door and tried to get out of the vehicle, but Childs put the gun to his chest and pushed him back into the driver's seat, saying he would "blow [his] f***ing head off" if he tried anything.

Meanwhile, Jennifer went to the passenger side of the SUV, opened the rear passenger door and told her children to get on the floor. She climbed inside and lay across the children

Jennifer told Daniel to just give the man what he wanted and threw a bunch of twenties, maybe $100, onto the front seat, which apparently distracted Childs momentarily and allowed Daniel an instant to shift the vehicle into drive and lunge forward. Childs fired a shot, apparently at Daniel's head, that pierced the pillar separating the driver's front and rear door windows. The spent projectile was later found on the front seat floorboard. Daniel thought he had been shot in the leg because he felt an explosion by his leg.

Daniel sped down the dead-end street, and Jennifer told him that the man was running after them. She heard more gunshots. Reaching the dead end, Daniel drove the SUV over an embankment and came out onto a street on the other side of it. As they drove off, they saw Childs again. Daniel testified that the man raised his gun toward them, so he quickly drove off.

Daniel initially stopped at a vacant parking lot and suggested they call the police, but Jennifer asked him to drive further away. Daniel drove to the Applebee's on Mansfield Road, which was their initial intended destination

to watch the football game. Jennifer testified that they called her family and then the police. That night, Jennifer searched the profile of the Facebook account from which the initial purchase message was sent to her. This profile showed a photograph of Isaiah Childs, whom she immediately recognized as the man who robbed and assaulted her. Additionally, Childs was wearing what appeared to be the same red hoodie he was wearing during the armed robbery.

The next day, the couple went to the Shreveport Police Department and gave a statement to Detective Melvin Smith. Jennifer gave him a copy of the inquiry from Childs regarding the purchase of the backpack and a copy of the photo of Childs taken from his Facebook profile page. Jennifer and Daniel told the detective that the man in the picture from the account named Isaiah Childs was the man who robbed them at gunpoint. They also showed Det. Smith their SUV and the bullet hole; a search led to the discovery of the spent projectile on the floorboard. A few days later an anonymous party delivered two cartridge casings found at the site after the shooting.

Childs was subsequently arrested and charged by bill of information with armed robbery while armed with a firearm and attempted second degree murder of Jennifer Reynolds while engaged in the perpetration of armed robbery. The state subsequently filed an amended bill of information deleting the second count.

Childs appeared for a jury trial on October 7, 2019, and asked that the matter be converted to a bench trial, but the prosecutor declined. Childs' attorney announced on the record that Childs had declined the state's offer of a 40-year sentence in exchange for his guilty plea. The prosecution

4

adduced testimony from the two victims, Jennifer and Daniel Reynolds, and Det. Smith. Childs testified on his own behalf and maintained his innocence based on mistaken identity.

After trial, the jury returned a verdict of guilty of armed robbery. The defense requested that the jury be polled. The resulting poll indicated a 10-2 guilty verdict. The trial court sentenced Childs to 75 years at hard labor, without benefit of probation, parole, or suspension of sentence.

## DISCUSSION

By his second assignment of error, Childs argues that the evidence admitted at trial was insufficient to prove that he was the person who robbed Jennifer Reynolds.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence, because the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981). *State v. Hearold*, 603 So. 2d 731, 734 (La. 1992).

The standard of review of a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416. When the issue raised in a sufficiency claim is the defendant's identity as the perpetrator,

rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Mathis*, 52,500 (La. App. 2 Cir. 1/16/19), 263 So. 3d 613. Positive identification by only one witness is sufficient to support a conviction; this court will generally not second-guess the factfinder's determination of the witnesses' credibility. *State v. Weston*, 52,312 (La. App. 2 Cir. 11/14/18), 260 So. 3d 722, *writ denied*, 18-2066 (La. 4/22/19), 268 So. 3d 299; *State v. Bass*, 52,014 (La. App. 2 Cir. 5/23/18), 248 So. 3d 639, 647, *writ denied*, 18-0939 (La. 3/6/19), 266 So. 3d 896.

From the outset, Childs' defense was that his prosecution for the armed robbery was a case of mistaken identity. He insisted that some unknown perpetrator used his Facebook account and his name to commit the crime. He stated that he does have a computer, but not a cell phone; he typically borrows cell phones and other devices and goes to the library nearby to check his Facebook account. Childs maintains that Jennifer Reynolds and Daniel Reynolds identified him in court as the perpetrator based on their alleged repeated views of the photograph on his Facebook account profile and from seeing him in a jail uniform at one pretrial proceeding. The implication is that the victims' method of identifying Childs as the perpetrator was highly "suggestive"[2] and, therefore, unreliable. Moreover, they were never required to pick Childs out of a lineup, nor did they ever give a physical description of him.

---

[2] This process of identification performed by the victim which resulted in finding a single Facebook photograph of Childs was not conducted by the police, and therefore, was in no way improper procedure.

There was no physical evidence to link Childs to the crime. The bullet hole and spent projectile found in the victim's SUV and the two bullet casings recovered from the scene were not linked to Childs. He did not live at the address where the offense occurred, although he did live about a half-mile away.[3] Thus, the physical evidence was merely linked to the crime – not to Childs.

Importantly, he argues, neither Jennifer nor Daniel remembered seeing two marks or scars on their assailant's face, while he (Childs) has two, on the right side of his face, one on his lip and one on his chin.

Childs testified that he was not the perpetrator in his two previous felony convictions committed at different times and to which he pled guilty: simple burglary and second-degree robbery.[4] He explained that he pled guilty to those offenses only so that he could go home on the basis of time served, but denied he committed the offenses.

The U.S. Supreme Court established five factors for the determination of whether the reliability of an *eyewitness* identification outweighs a suggestive identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State v. Turner,* 52,510 (La. App. 2

---

[3] Detective Smith testified that the defendant's home was four-tenths of a mile from the address of the crime.

[4] The latter offense is a crime of violence in which the required element is that the offender intentionally inflicted serious bodily harm while committing the robbery.

Cir. 4/10/19), 267 So. 3d 1202, *writ denied*, 19-00873 (La. 9/24/19), 279 So. 3d 386.

Applying these factors, we conclude that victims' eyewitness identification of Childs at trial as the perpetrator outweighed any suggestive effect of seeing his photograph on Facebook. We observe that both Jennifer and Daniel had ample opportunity to witness Childs and see his face clearly. Both testified that they looked him squarely in the face at close range. Daniel said that he looked Childs in the eyes and that his face was "framed" by the red hoodie that he wore. Both Jennifer and Daniel had no doubt whatsoever in their courtroom identification of Childs as the perpetrator. They did not give the police a verbal physical description of Childs, since they gave a photograph of the perpetrator with his name accompanying it. They did note that the perpetrator was wearing a red hoodie that appeared to be the same hoodie in the photograph.

There is simply no credible evidence to support Childs' implied argument that he could not have set up the robbery because he did not own a cell phone, especially after he testified that he used other people's phones and a nearby library "hot spot" or their computers to access Facebook. Detective Smith explained that there was no photo lineup or live lineup performed because the suspect had been identified by the victims the very evening of the crime through the Facebook profile photograph of Childs which they traced from the Facebook Messenger site Childs used to set up the armed robbery.

The robbery occurred approximately four-tenths of a mile, just a few blocks, away from where Childs resided. Although defense counsel questioned the identification made by the victims because neither recalled

8

seeing two marks or scars on the right side of Childs' face, the record contains no photograph of him whereby we could review the prominence of these alleged marks. Obviously, the jury did not find this argument to be persuasive.

Notably, Childs' credibility regarding his claim of misidentification was significantly undermined when he denied being the perpetrator of two prior felony offenses to which he pled guilty, one of which (second degree robbery) involved "intentional infliction of serious bodily injury." La. R.S. 14:64.4. It appears Childs is simply following the same pattern of denial.

We also observe that Childs did not file a motion to suppress, pursuant to La. C. Cr. P. art. 703, the victims' identification of him based on the Facebook photograph, nor has he shown the circumstances presented a substantial likelihood of misidentification. No objection was made to the identification at the time of the occurrence or prior to the verdict. La. C. Cr. P. art. 841 provides that an irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence.

We conclude that the evidence adduced by the state negated any reasonable probability of misidentification of Childs as the perpetrator of the crime. A rational trier of fact could conclude that the evidence was sufficient to identify Childs as the perpetrator of the armed robbery beyond a reasonable doubt.

This assignment is without merit.

By his first assignment of error, Childs contends that the verdict is a violation of the decision in *Ramos v. Louisiana,* 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). In *Ramos*, the Supreme Court held that the nonunanimous jury verdict system utilized in Louisiana was unconstitutional and found that

a unanimous jury verdict is required to convict a defendant of a serious offense at trial. Under the Louisiana Supreme Court holding in *State v. Richardson,* 20-00175 (La. 6/3/20), 296 So. 3d 1050, a less than unanimous jury verdict on a matter of direct appeal is error patent. *State v. Richardson,* 53,166 (La. App. 2 Cir. 7/1/20), 299 So. 3d 206.

Because the present matter was pending on direct review when *Ramos* was decided, the holding of *Ramos* applies to this case. *State v. Cohen*, *supra*; s*ee Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987). Thus, even if the nonunanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal must nonetheless consider the issue as part of its error patent review. La. C. Cr. P. art. 920(2); *State v. Corn*, *supra*.

In this case, the record shows that the guilty verdict was not unanimous, after a 10-2 polling by the court.

In its brief to this court, the state acknowledges that Childs' conviction is unconstitutional and warrants reversal.

Because we are remanding this case to the trial court for a new trial, discussion of the defendant's arguments regarding jury selection is pretermitted.

## CONCLUSION

For the reasons expressed, we vacate the conviction and sentence of Isaiah Childs for armed robbery and remand the case to the trial court for a new trial.

**REVERSED AND REMANDED.**